[No. G017975. Fourth Dist., Div. Three. Aug. 30, 1996.]

MATTHEW DUNK et al., Plaintiffs and Respondents;
WILLIAM GEER et al., Plaintiffs and Appellants, v.
FORD MOTOR COMPANY et al., Defendants and Respondents.

## COUNSEL

Lucinda A. Sikes and Brian Wolfman for Plaintiffs and Appellants.

Herbert Hafif, Wayne Austero, Robert S. Kilborne IV and John M. Van Dyke for Plaintiffs and Respondents.

Baker & Hostetler, G. Richard Doty, Emil W. Herich and Peter W. James for Defendants and Respondents.

## OPINION

**WALLIN, J.**—William Geer, John Loving, Bonnie Peterson, Robert Peterson, and David Whitworth appeal the judgment approving the settlement of a class action against Ford Motor Company relating to alleged defects in certain Ford Mustang convertibles, contending: (1) the trial court erred by finding the settlement was fair and reasonable; (2) notice to class members was not adequate; (3) the trial court erroneously certified a nationwide class for settlement;[1] and (4) the trial court erroneously calculated attorney fees and failed to make factual findings.[2] We affirm in part and reverse in part.[3]

Deidre Dale and Matthew Dunk filed a class action suit against Ford Motor Company in mid-1991, alleging causes of action for negligence, breach of express and implied warranty, strict liability, concealment, false representation, conversion, and breach of the implied covenant of good faith and fair dealing.[4] All of the causes of action related to an alleged defect in the door construction on 1983 through 1986 Mustang convertibles.

---

[1] The appellants' argument is titled "The Superior Court Erred . . . In Failing to Certify a Nationwide Class," but it is presented as we have stated it.

[2] Geer sets forth the second and third arguments as subsets of the first, but we will treat them as distinct. Because we conclude neither has merit, they will not alter our conclusion as to the first argument.

[3] Because the appeal has partial merit, we deny Dunk's motion for sanctions based on a frivolous appeal claim.

[4] Dale was later dismissed as a plaintiff. The plaintiff class will be referred to as "Dunk" for convenience, except for the objectors, who will be referred to as Geer.

Early in the proceedings, Ford removed the case to federal court, but Dunk successfully had the matter remanded to state court with an order for Ford to pay attorney fees. Ford's demurrer was sustained as to causes of action for conversion and breach of the implied covenant of good faith and fair dealing. After Dunk successfully opposed a motion for a protective order, discovery, including form and special interrogatories, document production, inspection of vehicles, and depositions were conducted from early 1992 until the spring of 1993.[5]

In May 1993, Ford's motion for summary adjudication was granted as to the causes of action for breach of express and implied warranty, and false representation, leaving intact causes of action based on negligence, strict liability, and concealment. Writ and review petitions were denied by this court and the Supreme Court, respectively.

In August 1993, the trial court granted class certification limited to California residents who owned 1983 through 1986 Mustang convertibles.[6] The parties agreed to mediation by retired Presiding Justice John K. Trotter in October 1993. After approximately six months, they agreed to a settlement. A stipulation was filed in October 1994, providing each class member would receive a coupon redeemable for $400 off the price of any new Ford car or light truck purchased within one year. Ford also agreed to pay attorney fees and costs not to exceed $1.5 million. The proposed settlement included a national class. The court tentatively approved the settlement and notice was sent to class members, including publication in USA Today.

Dunk and Ford submitted memoranda supporting the settlement, Ford submitted a memorandum opposing the attorney fees sought by Dunk, and Geer submitted objections to which Dunk and Ford submitted replies. After a hearing on the objections, the court entered judgment approving the settlement and awarding attorney fees of $985,000 and costs of $10,691.

I

 Geer contends the trial court erred in finding the settlement fair and reasonable, because Dunk did not meet his burden to show it was. Geer misapprehends Dunk's burden. Dunk made a sufficient showing which Geer failed to adequately rebut.

 " ' "[T]o prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action requires court approval." ' " (*Malibu*

---

[5]Fifty-eight of the depositions had already been taken in a similar action in Riverside County, which Dunk's counsel had to review.

[6]The court later reaffirmed that order after Ford sought reconsideration.

*Outrigger Bd. of Governors* v. *Superior Court* (1980) 103 Cal.App.3d 573, 578-579 [165 Cal.Rptr. 1]; see also *Marcarelli* v. *Cabell* (1976) 58 Cal.App.3d 51, 55 [129 Cal.Rptr. 509].) The court must determine the settlement is fair, adequate, and reasonable. (See *Officers for Justice* v. *Civil Service Com'n, etc.* (9th Cir. 1982) 688 F.2d 615, 625; Fed. Rules Civ. Proc., rule 23(e), 28 U.S.C.)[7] The purpose of the requirement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." (*Officers for Justice* v. *Civil Service Com'n, etc., supra,* 688 F.2d at p. 624.)

■ The trial court has broad discretion to determine whether the settlement is fair. (*Rebney* v. *Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1138 [269 Cal.Rptr. 844].) It should consider relevant factors, such as the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. (*Officers for Justice* v. *Civil Service Com'n, etc., supra,* 688 F.2d at p. 624.) The list of factors is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (*Id.* at p. 625.) "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.' [Citation.]" (*Ibid.*)

■ Geer urges the burden was on Dunk to show the settlement was fair, adequate, and reasonable, but cites no case or statute for that proposition. (But see Newberg & Conte, Newberg on Class Actions (3d ed. 1992) § 11.42, p. 11-94; 3B Moore's Federal Practice (2d ed. 1987) § 23.80[4], pp. 23-488; *id.* ( 1992-1993 supp.).) However, since some federal cases seem to assume the burden is on the proponents, we will presume, for the sake of argument, the premise is correct. (See, e.g., *In re General Motors Corp. Pick-Up Truck Fuel Tank* (3d Cir. 1995) 55 F.3d 768, 785 [" '[T]he court cannot accept a settlement . . . *the proponents* have not shown to be fair, reasonable and adequate.' [Citation.]" (Italics added.)]; but see *U.S.* v. *State of Or.* (9th Cir. 1990) 913 F.2d 576, 581 [court did not err by placing burden on objectors].)

---

[7]In the absence of California law on the subject, California courts look to federal authority. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964].)

Assuming the burden is on the proponents, a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. (Newberg & Conte, Newberg on Class Actions *supra*, § 11.41, pp. 11-91.)

■ Our task is limited to a review of the trial court's approval for a clear abuse of discretion. (*Officers for Justice* v. *Civil Service Com'n etc.*, *supra*, 688 F.2d at p. 626; see also *Rebney* v. *Wells Fargo Bank*, *supra*, 220 Cal.App.3d at p. 1138.) We will not "substitute our notions of fairness for those of the [trial court] and the parties to the agreement. [Citations.]" (*Officers for Justice* v. *Civil Service Com'n, etc.*, *supra*, 688 F.2d at p. 626.) " 'So long as the record . . . is adequate to reach "an intelligent and objective opinion of the probabilities of success should the claim be litigated" and "form an educated estimate of the complexity, expense and likely duration of such litigation, . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise," it is sufficient.' [Citations.] Of course, such an assessment is nearly assured when all discovery has been completed and the case is ready for trial. [Citation.]" (*Ibid.*)

■ Applying these factors, we conclude the trial court did not abuse its discretion. The case was over three years old when it settled. Extensive discovery and pretrial litigation, including a demurrer and motion for summary judgment, had been conducted. Plaintiffs' experienced attorneys had learned the alleged defect did not affect the vehicles' crashworthiness. No instance of personal injury was found. At most, the defect caused a poor door fit, resulting in some water leakage, wind noise, and minor cosmetic damage, such as paint chipping. The maximum damages to each member of the plaintiff class was $600 (the highest repair estimate), and the settlement coupons represented two-thirds of that amount, or $400. Although several people objected, their numbers were small in comparison to the entire class of over 65,000.

Plaintiffs' and Ford's counsel believed there were statute of limitation and other potential problems that would negatively impact the chances of recovery.[8] Given the risks, they believed the settlement was reasonable. The independent mediator, a retired superior court judge and appellate justice

---

[8]In his reply brief, Geer acknowledges we should refrain from deciding the merits of the case in reviewing the settlement (see *Cotton* v. *Hinton* (5th Cir. 1977) 559 F.2d 1326, 1330), yet proceeds to rebut the plaintiffs' grounds for concluding the case had problems. Even if Geer's points have merit, they do not mandate a conclusion the trial court abused its discretion as a matter of law.

with substantial experience and respect in the legal community, recommended the settlement.

Voluminous pleadings were filed in support of and in opposition to the settlement, and the trial court reviewed the extensive court file and heard oral argument. Under the review standard we have explicated, the record was ideal for the trial court to make a rational and educated determination the settlement was fair, adequate and reasonable.[9]

This conclusion is consistent with the one reached in *Rebney* v. *Wells Fargo Bank, supra*, 220 Cal.App.3d 1117, albeit in dictum. Finding no abuse of discretion, the Court of Appeal stressed the substantial inquiry made by the trial court, participation by neutral facilitators, the full opportunity for objectors to be heard, and the " 'difficult, heated, and complex' " negotiations. The court approved the settlement even though "the monetary relief provided by the settlements was relatively paltry." (*Id.* at p. 1139.)

Geer relies on *In re General Motors Corp. Pick-Up Truck Fuel Tank, supra*, 55 F.3d 768 to argue the trial court erred as a matter of law. *General Motors* involved a vehicle defect class action case similar to this one, although *General Motors* dealt with improper fuel tank placement. The Third Circuit Court of Appeals found the district court abused its discretion as a matter of law when it approved the settlement, primarily because it believed the case settled before it was adequately developed by the plaintiffs and the coupon settlement did not provide adequate value. (*Id.* at pp. 818-819.)

We could simply distinguish *General Motors* on the ground Dunk's case involved comprehensive discovery, pretrial motions, and protracted mediation before it settled. But we are concerned about the approach taken in *General Motors*. The court used a formalistic nine-factor analysis it had developed in *Girsh* v. *Jepson* (3d Cir. 1975) 521 F.2d 153. Although the use of standard factors can be productive of uniformity in any legal analysis and many of the *Girsh* factors track those we have adopted from *Officers for Justice* v. *Civil Service Com'n, etc., supra*, 688 F.2d 615, we question the *General Motors* court's use of the factors in an appellate review for abuse of discretion.

The court looked at each factor separately and determined whether the trial court reached the appropriate decision. It reweighed the factors and determined the court erred as a matter of law. (*In re General Motors Corp.*

---

[9]We reach this conclusion recognizing class action settlements should be scrutinized more carefully if there has been no adversary certification. (*Mars Steel* v. *Continental Ill. Nat. Bank & Trust* (7th Cir. 1987) 834 F.2d 677, 681.)

*Pick-Up Truck Fuel Tank, supra,* 55 F.3d at pp. 804-819.) It is particularly troubling that the appellate court rejected expert evidence on the value of the settlement by relying on inconsistencies in, and isolated portions of, the expert's testimony and apparently substituted its own "concern" about how many coupons would actually be redeemed. (*Id.* at pp. 807-810.) Such an approach is inimical to the abuse of discretion concept of review, when the inquiry is, as here, extremely fact intensive. (See *McGhan Medical Corp.* v. *Superior Court* (1992) 11 Cal.App.4th 804, 808-810 [14 Cal.Rptr.2d 264] [fact intensive issues should be reviewed by a clearly erroneous standard]; see also *U.S.* v. *State of Or., supra,* 913 F.2d at pp. 580-581.)

Geer claims Dunk failed to put forth any evidence on the value of the settlement. Not so. Dunk's settlement memorandum established coupons worth $400 each would be made available to the class of over 65,000, for a total potential value of over $26 million. Although expert testimony is not required to conclude less than 100 percent of the class will redeem the coupons, Dunk's counsel showed the settlement was of value to the class. Given the other factors we have discussed, the showing was adequate.

Geer urges the objectors established the settlement was effectively value-less by proving only a small percentage of the class would redeem the coupons.[10] He errs in the premise. The objectors' "proof" was composed of a combination of their common sense, reference to the expert testimony in *In re General Motors Corp. Pick-Up Truck Fuel Tank, supra,* 55 F.3d 768, and experiences in other cases.[11] Geer urges us to take judicial notice of that testimony, but the objectors submitted no proof the estimates in the *General Motors* case apply to this case. This is not the type of rebuttal that would merit an appellate court overturning the trial court's finding.[12] Nothing is added by Geer's distinguishing similar cases where settlements were upheld. (See, e.g., *In re Domestic Air Transp. Antitrust Litigation* (N.D.Ga. 1993) 148 F.R.D. 297, 305 [coupons for future air travel].)

Geer argues the settlement is unfair because there is no rational basis for distinguishing between those who will profit and those who will not. He

---

[10]In his brief, Geer suggests the actual figure is only 1 percent, making the settlement value around $260,000. The expert testimony in *In re General Motors Corp. Pick-Up Truck Fuel Tank, supra,* 55 F.3d at page 807 indicated a predicted use rate of 17 percent, yielding a total value in this case of almost $4.5 million.

[11]In his reply brief, Geer cites the calculations by objector Peter M. McClintock predicting a 0.3 percent redemption rate. Nothing in the record shows he has any expertise in statistics, however, and his methodology and assumptions are questionable.

[12]We do not suggest valuations in other cases are irrelevant to settlement approval. (See generally, Abraham & Robinson, *Aggregative Valuation of Mass Tort Claims* (1990) 53 Law & Contemp. Probs. 137.) But given the conclusion by plaintiffs' counsel that this case was looking like a $600 small claims action, at best, for each individual plaintiff, we cannot say as a matter of law the trial court approved an ephemeral settlement.

reasons only those who have the ability to purchase a new Ford car or light truck within 12 months will benefit. But he does not present any evidence showing a sizable number of class members, all of whom had the resources to purchase a Mustang convertible, would be unable to afford a new car. Nor does he present any authority for the proposition that all members of the class must be able to use the coupon before the settlement can be deemed fair.[13]

Although we conclude the trial court did not abuse its discretion in approving this settlement, we stress we do not imply coupon settlements in class action cases are always ideal. Questions arise as to the value of a settlement where, as here, the coupon relates to a "big ticket item," is not transferable, represents only a tiny percentage of the purchase price, and is valuable to the defendant as an inducement to promptly purchase the defendant's product.[14] We merely hold that the trial court's scrutiny here, particularly in light of the substantial questions raised and information presented, was adequate to support its conclusion.

## II

■ Geer asserts the notice to class members provided by R.L. Polk & Company was inadequate. He does so by relying on another case where an expert witness testified Polk's approach resulted in notifying less than half the class. As we noted regarding Geer's value calculations, reliance on data in other cases does not constitute evidence sufficient to overturn the trial court in this case. And, this argument ignores indications in the record that notice was given in USA Today, showing the mass-media approach Geer argues is necessary to ensure proper notice was given.[15]

## III

■ Geer claims the trial court erroneously certified a nationwide class for settlement. As noted, the court originally declined to certify a national class, limiting it instead to California residents. Geer points out the court made no later findings that a nationwide class would be proper. No findings

[13]Indeed, in any coupon settlement, some class members will not use the coupon for any number of reasons: lack of resources, a dislike for the retailer, or no need for the product. While it would be well for trial courts to consider this in reviewing coupon settlements, it is, at most, a factor.

[14]We do not imply, however, that settlements benefiting the defendant along with the class members should be automatically disapproved. "Win-win" settlements are not per se unreasonable.

[15]Because we conclude the argument has no merit, we need not address Ford's claim Geer has no standing on this issue.

were required, and we cannot say the court abused its discretion in certifying a nationwide class for settlement.

■ Code of Civil Procedure section 382 provides: "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." "Although the statute appears to speak in the alternative, . . . two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented [citations]." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *Baltimore Football Club, Inc.* v. *Superior Court* (1985) 171 Cal.App.3d 352, 358 [215 Cal.Rptr. 323].) "[C]ommunity of interest . . . embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

■ Geer claims the second factor was not met because different laws in various states defeat the commonality of law requirement. (See *Baltimore Football Club, Inc.* v. *Superior Court, supra,* 171 Cal.App.3d at pp. 363-364.)[16] But because the case was settling, protracted determinations of other states' laws were unnecessary. Geer disagrees, arguing, "[B]ecause the perceived strength of the plaintiffs' claims was necessarily a factor in the settlement that was reached, and the settlement appears to have been based on an evaluation of California law, non-California class members may have received a far different deal if their claims had been assessed under the laws of their own jurisdictions."

That reasoning suffers from at least two defects: (1) The record does not show settlement was based only on consideration of California law;[17] and (2) the argument relates only to whether the settlement was fair in general, not

---

[16]Although the *Baltimore Football Club* court discussed this as a factor in overturning the national class certification, the opinion relied primarily on existence of multiple defendants, with respect to many of whom the plaintiff did not have standing. (171 Cal.App.3d at pp. 359-363; but see *Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 654 et seq. [243 Cal.Rptr. 815] [upholding trial court determination that questions of law were too numerous to certify nationwide class].)

[17]At least Geer does not direct us to where such a showing exists, as is his duty. (*Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712] [point treated as waived, where unsupported by argument, citation of authority, or record reference, or claim of reversible error].)

to whether there was any inherent flaw in class certification.[18] "Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in [granting] certification. '[T]rial courts have been given great discretion with regard to class certification. . . . [I]n the absence of other error, [an appellate] court will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used . . . or (2) erroneous legal assumptions were made . . . .' [Citations.]" (*Osborne* v. *Subaru of America, Inc., supra,* 198 Cal.App.3d 646, 654.) We see no suggestion of such error. The court acted within its discretion by determining a national class was appropriate for settlement purposes.[19]

## IV

▉ Geer urges the trial court erroneously calculated attorney fees and failed to make formal factual findings. The latter argument lacks merit. The trial court is not obliged to make formal findings in the absence of a request. (*Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 233 [226 Cal.Rptr. 265]; and see *Rebney* v. *Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1349 [284 Cal.Rptr. 113](*Rebney II*) [statement of decision is not necessary in the absence of a request].) The former argument, however, is meritorious.

---

[18]We have already determined the trial court did not abuse its discretion by approving the settlement. We would be disinclined to engraft a requirement that the court expressly consider the law of every state involved before it could make such a finding. Nor would we be inclined to suspect unfairness due to differing laws in the absence of any showing such laws rendered the settlement unfair as to a significant number of class members.

[19]Geer argues the court must use the same standard under Federal Rules of Civil Procedure, rule 23 (28 U.S.C.) to determine the propriety of both settlement and litigation class certifications, relying on *Georgine* v. *Amchem Products, Inc.* (3d Cir. 1996) 83 F.3d 610. (See also *In re General Motors Corp. Pick-Up Truck Fuel Tank, supra,* 55 F.3d at p. 798; and see *In re American Medical Systems, Inc.* (6th Cir. 1996) 75 F.3d 1069, 1080-1082 [applying rule 23 in evaluating propriety of the class].) That rule is contrary to the Ninth Circuit rule, stated in *Officers for Justice* v. *Civil Service Com'n etc., supra,* 688 F.2d at page 633, and the position of the leading commentators (Newberg & Conte, Newberg on Class Actions, *supra,* § 11.28 at p. 11-58), which allow a lesser standard of scrutiny for settlement cases. (See also *In re Asbestos Litigation* (5th Cir. 1996) 90 F.3d 963, 975 [court should take settlement into account in evaluating class certification]; *In re Dennis Greenman Securities Litigation* (11th Cir. 1987) 829 F.2d 1539, 1543.) We agree with the latter. The two basic purposes for the rule 23 certification requirements, as they relate to questions of a nationwide class, are: (1) to keep the lawsuit manageable for trial; and (2) to protect the interests of the nonrepresentative class members. The first purpose is inapposite in the settlement context, and the second, as it relates to commonality of issues, only makes a difference if the nonrepresentative class members would do much better by litigating on their own or in their own jurisdiction. The second category concerns are protected by the trial court's fairness review of the settlement. Geer has not cited any specific instance where a non-California class member stood to recover significantly more than in California if the case were tried in his or her jurisdiction. Because we find no error, we need not address Ford's claim that Geer has raised the certification argument for the first time on appeal.

 Dunk and Ford preliminarily challenge Geer's standing on the attorney fees issue, arguing the fees were a separately negotiated maximum amount and Geer would not be entitled to the balance of any portion of the amount not awarded. "We start with the rule that appeals may be taken only by aggrieved parties. [Citation.] Appellants must be parties of record, and their rights or interests must be injuriously affected by the judgment. [Citation.] They may not assert error that injuriously affected only nonappealing coparties. [Citations.]" (*Rebney* v. *Wells Fargo Bank, supra*, 220 Cal.App.3d at p. 1128 (*Rebney I*), italics omitted.)

 In *Rebney I,* the Court of Appeal found the objectors lacked standing to challenge the expansion of the class and the fairness of the settlement because they were not aggrieved by the defendant bank's improper fee practices. (*Rebney I, supra*, 220 Cal.App.3d at pp. 1128-1132.) That finding did not apply to the attorney fees issue, which involved the percentage split of the attorney fees pool among the participating attorneys. Indeed, the Court of Appeal held, "[The objectors] have standing to assert this point because, if the agreement provided an incentive for one or more of the class attorneys not to litigate and thereby put his own interests ahead of the clients, then all class members were harmed." (*Id.* at p. 1142.)

That rationale is similar to the one Geer propounds. His position was also adopted by the Court of Appeals in *In re General Motors Corp. Pick-Up Truck Fuel Tank, supra*, 55 F.3d 768, where the respondents made the same argument. The court's reasoning is well taken and we adopt it: "[T]horough judicial review of fee applications is required in all class action settlements. . . . '[A] defendant is interested only in disposing of the total claim asserted against it. . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense.' [Citations.] In light of these realities, [the] argument that objectors have no standing to contest the fee arrangement is patently meritless: the fee agreement clearly does impact their interests . . . . [¶] [T]he divergence in financial incentives [between the class and counsel] creates the 'danger . . . that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees.' [Citations.]" (*Id.* at pp. 819-820.)[20]

 Having determined Geer has standing, we turn to the merits. "A finding that the settlement was fair is not dispositive of the

[20]This concern mandates thorough scrutiny in *all* cases, but Geer correctly recognizes, as we do, there was absolutely no evidence of such conduct by plaintiffs' counsel. In fact, their outstanding reputation in general, and zealous advocacy in this case in particular, demonstrate the opposite.

attorney fees issue. 'The test to be applied is whether, at the time a fee sharing agreement is reached, class counsel are placed in a position that might endanger the fair representation of their clients and whether they will be compensated on some basis other than for legal services performed.' [Citation.] To make the fairness of the settlement the test would encourage concealment of the agreement until after the settlement. [Citation.]" (*Rebney I, supra*, 220 Cal.App.3d at p. 1143, fn. 8.) Nevertheless, the fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award. (*Id.* at p. 1142.) We review the determination using an abuse of discretion standard. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365].)

Dunk asserts the nearly $1 million attorney fees were properly determined to be a reasonable percentage of the common fund, as they were only a tiny percentage of the potential settlement value of over $26 million. This argument suffers from two flaws: (1) The award of attorney fees based on a percentage of a "common fund" recovery is of questionable validity in California; and (2) even if it is valid, the true value of the fund must be easily calculated.

In *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303], the Supreme Court acknowledged the use of a percentage method in common fund cases, but concluded there was no evidence the parties intended the attorney fees would be paid out of any common fund that had been created, so the doctrine was inapplicable. (*Id.* at pp. 37-38.) Similarly, here the evidence demonstrates the attorneys were not to be paid from the "coupon fund," but from a distinct amount not exceeding $1.5 million. Later cases have cast doubt on the use of the percentage method to determine attorney fees in California class actions. (*People* ex rel. *Dept. of Transportation* v. *Yuki* (1995) 31 Cal.App.4th 1754, 1769 [37 Cal.Rptr.2d 616]; *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 954 [218 Cal.Rptr. 839]; *Jutkowitz* v. *Bourns, Inc.* (1981) 118 Cal.App.3d 102, 110 [173 Cal.Rptr. 248]; cf. *In re Washington Public Power Supply Sys. Lit.* (9th Cir. 1994) 19 F.3d 1291, 1296 [depending on the circumstances, either the percentages or lodestar method may be appropriate].)

Even if the method is permissible, it should only be used where the amount was a "certain or easily calculable sum of money." (*Serrano* v. *Priest, supra*, 20 Cal.3d at p. 35.) Although the ultimate settlement value to the plaintiffs could be as high as $26 million, the true value cannot be ascertained until the one-year coupon redemption period expires. This is not the type of settlement that lends itself to the common fund approach.

The alternate approach is the "lodestar" or "touchstone" method, "[by] which the court calculates base amounts from a compilation of time spent and reasonable hourly compensation of each attorney and then may adjust the base amounts in light of various factors. [Citations.]" (*Rebney II, supra,* 232 Cal.App.3d at p. 1347.)[21] To withstand scrutiny on appeal when this method is used, the record need only show the court awarded fees using that approach. (*Id.* at p. 1349.) That was not done here.

Dunk consistently lobbied the trial court to use the common fund approach. The only exception was a footnote at the end of his reply pleading on attorney fees expressing a willingness to have the trial court "determine the reasonable value of their services based upon the Court's intimate knowledge of class counsel's skill and expertise, as well as other factors, as determined from various appearances during the course of this litigation, coupled with a review of the work performed as detailed in the Litigation History on file." That invitation falls short of the minimal required showing that fees were actually awarded using the lodestar method, particularly here where there is nothing in the record showing even an approximation of the hours actually spent. (Cf. *Sommers* v. *Erb* (1992) 2 Cal.App.4th 1644, 1651-1652 [4 Cal.Rptr.2d 52] [no time records were available, but counsel at least submitted a representation as to the hours actually spent].)

Because use of the common fund approach is improper in this case, the record does not reflect the presentation of information sufficient to properly apply the lodestar approach, and we are unable to determine how the trial court calculated the fees, the matter must be remanded. We realize the failure to keep time records may make it difficult for Dunk's counsel to submit precise figures,[22] but they should be able to produce estimates based on the functions performed that will allow the court to properly calculate the lodestar amount. When the information is supplied, the court can determine a reasonable fee.[23]

The judgment is affirmed insofar as it approves the terms of the settlement other than attorney fees. As to the attorney fees, it is reversed and the matter

[21]Some of those factors, relevant to this case, are: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award . . . ." (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 49.)

[22]A moral from this case may be that it would behoove plaintiffs' counsel, especially in class action cases, to keep time records even when the client is not being charged on an hourly basis.

[23]Our determination the trial court abused its discretion in setting the attorney fees rests on the court's failure to make a record for appellate review showing how the fees were calculated. We do not suggest in any way that the amount of fees awarded was unreasonable. On remand the trial court may decide to award the same, a greater, or a lesser amount.

is remanded for a determination of those fees in a manner consistent with this opinion. Each party is to bear its own costs on appeal.

Crosby, Acting P. J., and Sonenshine, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 11, 1996.