Filed 10/1/14  Webster v. LegalZoom CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| KATHERINE WEBSTER,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEGALZOOM.COM, INC.,<br><br>    Defendant and Respondent,<br><br>RANDALL WHITING et al.,<br><br>    Objectors and Appellants. | B240129<br><br>(Los Angeles County<br>Super. Ct. No. BC 438637) |

APPEAL from a judgment of the Superior Court of Los Angeles, William F. Highberger, Judge.  Affirmed.

Green & Noblin, Robert S. Green and James Robert Noblin for Objector and Appellant Randall Whiting.

Law Office of Darrell Palmer and Joseph Darrell Palmer for Objectors and Appellants David Johnson and Trent Manbeck.

The Martini Law Goup and Steven D. Martini for Objector and Appellant Abigail Mings.

The Arns Law Firm, Robert S. Arns, Jonathan E. Davis, Steven R. Weinmann; Stebner and Associates, Kathryn A. Stebner and Sarah Colby for Plaintiff and Respondent Katherine Webster.

Sidley Austin, Alycia A. Degen, Robert A. Holland, Patrick E. Kennell III and Stuart C. Edmiston for Defendant and Respondent LegalZoom,com, Inc.

_____

The trial court approved a class action settlement.  We affirm.

## I.  Facts

This appeal stands at the confluence of two Los Angeles class actions against LegalZoom.com, Inc.  One class action is *Drozdyk v. LegalZoom*, which later became *Whiting v. LegalZoom.*   The other is *Webster v. LegalZoom.*

LegalZoom, the defendant in both of these cases, is a nationwide internet company that sold self-help legal documents to the public.  LegalZoom's website advertised, "Save time and money on common legal matters!"  Its self-help legal documents offered assistance with name changes, wills, trusts, incorporations, trademark registrations, divorces, and so on.  Consumers could visit the LegalZoom website, select documents they wanted, and answer questions on the screen.  LegalZoom employees would check answers for completeness, consistency, and spelling.  Software generated the documents, which employees checked and mailed to the customer.  LegalZoom charged between $35 and $299 for most documents.

The first class action against LegalZoom started as *Drozdyk v. LegalZoom* on September 15, 2009, and changed to *Whiting v. LegalZoom* in 2011.  The original plaintiff was Charles Drozdyk, who alleged problems using LegalZoom documents for his Bike Cafe business.  Drozdyk sued under Business and Professions Code section 17200 and under a 2002 California statute called the Legal Document Assistant Act, Business and Professions Code sections 6400–6415.

Katherine Webster began a different class action against LegalZoom on May 27, 2010.  Webster claimed LegalZoom misrepresented its business by making customers believe anyone could use its website to create effective and reliable legal documents, without hiring an attorney.  Webster's complaint differed from Drozdyk's.  Webster originally made no claim under the Legal Document Assistant Act.  Rather, she alleged negligence, elder abuse, a violation of the Consumer Legal Remedies Act, Civil Code section 1750 et seq., and a violation of Business and Professions Code section 17200.

The *Drozdyk* and *Webster* cases were both assigned to the complex litigation program of the Los Angeles Superior Court, in the Central Civil West courthouse.  Judge

2

West presided over *Drozdyk*, while Judge Highberger handled *Webster*. Webster filed a related case notice on July 12, 2010. On August 3, 2010, Judge Highberger declined to relate the cases because, as they then stood, the issues did not have enough overlap to justify relating the two. Each case therefore remained with the judge originally assigned.

Webster amended her complaint on August 25, 2010 to allege a nationwide class, adding counts based on unjust enrichment, declaratory relief, and the Legal Document Assistant Act.

After more than a year, Drozdyk withdrew from his lawsuit, not wanting potential employers to see his name in litigation. So his attorneys amended their complaint, changing the named plaintiff from Drozdyk to Randall Whiting. Whiting alleged problems with LegalZoom divorce documents. This change from Drozdyk to Whiting was in February 2011, some eight months after Webster filed her suit.

After Whiting entered the scene, his case and Webster's case progressed in a coordinated fashion: all parties appeared before both trial judges, who harmonized the proceedings. One month after the February 2011 change of plaintiffs in *Whiting*, Webster and LegalZoom scheduled mediation dates with a retired judge who ultimately would settle the *Webster* case. Newly-arrived plaintiff Whiting participated in the first two days of this joint mediation in May 2011. Judge West monitored the progress of these joint settlement discussions. That month, plaintiff Katherine Webster settled with LegalZoom, but plaintiff Randall Whiting did not. LegalZoom demanded the settlement cover all theories in the *Webster* case, including her claim under the Legal Document Assistant Act. This meant the *Webster* settlement would resolve the *Whiting* case too.

All parties notified both trial judges about the *Webster* settlement. Within days, all the parties — Whiting's lawyers, Webster's lawyers, and LegalZoom — attended a joint hearing before Judge West. Judge West reviewed developments in both cases and heard from counsel for plaintiff Whiting, for plaintiff Webster, and for LegalZoom. At the joint hearing, Whiting's counsel's immediate concern was about which plaintiff lawyers — the Whiting group versus the Webster group — would have "effective control" of the litigation. Judge West responded: "Well, I'm not concerned about who

3

has control. [Judge Highberger and I] have concurrent jurisdiction. There's no question that these cases are both pending in the Los Angeles Superior Court before two different judges, each of which has jurisdiction over them. . . . And I guess *I see the tail wagging the dog here. And the concern being who's primary and who's lead counsel and who's this and who's that, which is really of little consequence to the underlying merits of the case.*" (Italics added.) Judge West explained the earlier filing of the *Drozdyk* case did not give Whiting's lawyers a right to control Webster's case. Judge West said he would consult with Judge Highberger and then decide about future procedures and hearings for the *Whiting* case.

Two weeks later, on June 3, 2011, Judge West stayed the *Whiting* case, pending rulings from Judge Highberger about the *Webster* settlement. Whiting challenged this stay by petitioning for a writ of mandate/prohibition. In that petition, Whiting raised most of the arguments he advances in this appeal. On August 4, 2011, this court denied Whiting's writ petition.

After the stay in *Whiting*, Judge Highberger gave Whiting ample opportunity to participate in *Webster*. On September 8, 2011, the judge granted Whiting's motion to intervene, even though Whiting's lawyers told him, "No, we can't tell you that we would get a better settlement" with LegalZoom than Webster had negotiated. Whiting's counsel also admitted that to reject the *Webster* settlement — as Whiting was urging — might result in complete defeat for all plaintiff class members. Whiting's lawyers sought to have themselves appointed as class counsel. Judge Highberger told Whiting's lawyers that "I haven't been persuaded of the fact that you have the first filed [*Drozdyk*] case means that you should somehow be able to impede the [*Webster*] settlement." The court found Whiting's lawyers kept raising the same issues, in effect demanding reconsideration of past court rulings. The court said it "looks to me like this has become an entirely disruptive exercise in ways I didn't anticipate when I exercised my discretion to allow permissive intervention." The trial court granted preliminary and then final approval of the *Webster/LegalZoom* settlement.

4

This settlement established a consent decree governing LegalZoom's future conduct, and it created other class benefits as well. The court valued the settlement at over $6.8 million. Webster attorneys requested legal fees of $2.2 million. This $2.2 million sum was less than Webster's lodestar (calculated by multiplying hours of work times hourly rate) of $3.4 million, including costs. But Webster's counsel waived some of the lodestar and requested the reduced sum of $2.2 million, which the court awarded.

Whiting appealed, as did objectors Abigail Mings, David Johnson, and Trent Manbeck.

**II. The trial court did not abuse its discretion by approving this settlement**

Whiting and objectors Mings, Johnson, and Manbeck challenge the settlement as unfair, saying Webster's lawyers got too much and the class got too little. Whiting did not challenge Webster's attorney fee request in the trial court and thus we do not consider this fee award on appeal. We turn to whether the settlement was fair to the class.

A

The trial court has broad discretion to evaluate whether a settlement is fair. (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 339, 407; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1802.) It is sufficient if the record is adequate to reach an informed estimate of case value. (*Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th at p. 1802.) We do not substitute our notions of fairness for those of the trial court, and we do not reweigh the relevant factors. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245.) We accord great weight to the trial judge's views. Trial judges have a first-hand view of the litigants and their efforts, tactics, and strategies. (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1145.) Trial judges know the costs and risks the parties face. (*Ibid.*) They are """"on the firing line and can evaluate the action accordingly.""" (*Ibid.*)

B

There is a presumption of fairness where: (1) the settlement is reached through arm's-length bargaining; (2) ample discovery allows counsel and the court to act

5

intelligently; (3) counsel are experienced with class actions; and (4) the percentage of objectors is small.  (*Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th at p. 1802.)

This presumption of fairness applies here.

First, the settlement was reached through arm's-length bargaining.  Webster and LegalZoom fought bitterly until a retired judge mediated the conflict.  The court remarked, "[y]ou were all fighting like mad dogs.  It was remarkable when peace broke out, because the scrappiness was obvious and all of a sudden the water is calm."

Second, the record before the trial court was extensive and extensively analyzed.  Webster and LegalZoom settled after substantial discovery.  Webster had (but Drozdyk and Whiting had not) deposed founders of LegalZoom.  Webster had (but Drozdyk and Whiting had not) successfully moved to compel discovery of key LegalZoom documents.  Webster had (but Drozdyk and Whiting had not) set a motion for class certification for May 2011, but Webster took this motion off calendar when the case began heading for mediation.  After Webster settled, the trial court gave Whiting many opportunities to critique the settlement.  From September 2011 through April 2012, all sides debated the deal in four hearings that occupy 139 transcript pages.  Throughout these hearings, the trial court examined Whiting's objections and displayed command of the case's issues.  Whiting claimed the settlement produced too little for the class, but the trial court concluded plaintiffs faced daunting obstacles to victory:  the case was not a  "lay-down winner" or a "no-brainer winner" for the plaintiff class.  The trial court developed an informed assessment of the settlement.

Third, Webster's lawyers were experienced.  And fourth, there were only eight objectors out of a class of over a million people;  two of these objectors sided with LegalZoom.  Rounded to the nearest integer, then, the percentage of objectors was 0 percent.

## C

Whiting and the others have not rebutted the presumption of fairness.

Whiting denigrates the value of the settlement to the class, but the settlement produced a consent decree that mirrored Webster's and Whiting's theory of the case.

6

Webster accused LegalZoom of misrepresenting LegalZoom's service. The consent decree provided a range of specific changes to cure the supposed misrepresentations. The settlement also achieved other benefits to the class, such as an attorney consultation program Whiting values at $150,000 or $1.1 million and the trial court found was worth over $6 million. There were other class benefits as well.

Whiting dismisses this consent decree as "worthless." Why worthless? Whiting's first argument improperly relies on an extra-record document that is not subject to judicial notice. Whiting's second reason is that "every company is obliged to follow the law, and thus an injunction to that effect changes little." This is incorrect. Legal adversaries commonly disagree about what "the law" requires, but a detailed consent decree — an injunction — is a conventional way to resolve disagreement over the specifics of "the law."

Whiting says this was a "reverse auction," meaning LegalZoom settled with the lowest bidder. The key question is whether the settlement was fair, however, and trial court decided there was no sign the class could do better. The court tallied the weaknesses in the case against LegalZoom. The class action was to defend consumers, but there was little evidence of consumer injury. The court noted that "the core of the claims that have been advanced have not suggested general incompetence or negligence by the [LegalZoom] software and the authors of the [LegalZoom] documents uploaded as software, but rather essentially [they are] these technical statutory violations." Reports from class members showed "entire consumer satisfaction" with everything from LegalZoom. "Nobody has shown a record of lots of people discovering that bankruptcy courts are rejecting their [LegalZoom] filings or that people find themselves intestate [due to faulty LegalZoom wills] or secretaries of state and departments of corporations are rejecting [LegalZoom] corporation papers." To the contrary, most consumers seemed happy with LegalZoom.

Whiting suggests LegalZoom should pay substantial sums to class members but has not explained why more litigation would have achieved this goal. If there are published decisions construing the Legal Document Assistant Act, Whiting has not cited

7

them and this court has not found them. This lawsuit is not like a typical wage-and-hour class action, for instance, where the statute sets forth definite penalties a losing defendant must pay. (Cf. Bus. & Prof. Code, §§ 6410 [providing for contract rescission] & 6412.1 [remedies for violations].) Restitution was problematic because much of the class, perhaps including Whiting himself, had already used their LegalZoom documents successfully. (See *In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 131.) Nor is this a case where LegalZoom sold a worthless or defective product. Many class members were pleased with LegalZoom and rejected the idea it should have been sued at all. When a case is not primarily about ill-gotten gains or compensation for actual injuries, a consent decree may well be the socially optimal result.

Whiting cites *Brehm Communities v. Superior Court* (2001) 88 Cal.App.4th 730, 736, which interpreted section 877.6 of the Code of Civil Procedure. This case does not involve that statute.

The other objectors make similarly invalid arguments.

The trial judge investigated and rejected the possibility Webster surrendered her legal claim for less than it was worth. The trial court did not abuse its discretion. (See *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, *supra*, 186 Cal.App.4th at p. 409.)

### III.  Webster was a proper class representative

Whiting argues the settlement should be disapproved because lead plaintiff Katherine Webster lacked standing to sue LegalZoom. This argument is incorrect.

Webster's connection to LegalZoom was through her dying uncle, who asked her to be executor of his will and co-trustee for his revocable living trust. Niece Webster helped her uncle prepare his final papers on LegalZoom's website. Working together, Webster and her uncle made a joint decision to buy a living trust from LegalZoom. Webster was the one who completed the information on LegalZoom's website. After her uncle's death, Webster allegedly discovered problems that she paid to fix. The trial court said Webster's allegations showed she and her uncle had a "common purpose" and an "equal interest" in buying and using the LegalZoom product. The trial court was "not troubled" by Whiting's claim that Webster lacked standing.

8

Webster had standing as her deceased uncle's personal representative. (See Code Civ. Proc., § 377.30 ["an action may be commenced by the decedent's personal representative"]; Prob. Code, § 58 ["personal representative" includes executor and administrator]; Prob. Code, § 9820 [personal representative may sue for the benefit of the estate].)

Whiting raises an invalid objection to this analysis. He argues Webster's status is flawed because she had not obtained a court order appointing her as executor. (See Prob. Code, § 8400 [personal representative must obtain court order].) Webster concedes she did not get this court order. But LegalZoom waived this flaw, which is merely technical and goes to Webster's capacity to sue rather than her standing. (See *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1394 [defective appointment of personal representative meant plaintiff lacked "capacity to sue"]; *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 669 [distinguishing capacity to sue from standing to sue].) Lack of capacity to sue is a plea in abatement that the defendant waives by failing to raise it at the earliest opportunity. (*Id.*, pp. 669-670.) "'"It is a technical objection and must be pleaded specifically."'" (*Id.*, p. 670.) LegalZoom waived this plea in abatement because LegalZoom answered Webster's complaint without specifically pleading Webster's incapacity to sue. Whiting cites no case where an objector has been permitted to resurrect a capacity issue the defendant has waived.

LegalZoom's decision to waive the capacity issue was logical. By pleading Webster's incapacity, LegalZoom would have accomplished little beyond prompting Webster then to obtain the necessary court order. This detour would have had little practical value. It would not have advanced resolution of the underlying merits.

Whiting suggests Webster could not easily have cured her capacity infirmity. But Webster faced no requirement to do so, because LegalZoom had waived the point. And even assuming a cure was needed, this record suggests no practical difficulty. Webster's status was uncontested because no other heir to her uncle's will was competing with her. This case thus is different than *Estate of Stoker* (2011) 193 Cal.App.4th 236, 238–239, which concerned an actual will contest.

9

The trial court did not err in dismissing Whiting's standing challenge.

Whiting also argues the judgment must be overturned because Webster suffered consequential damages atypical of the class. However, "[d]ifferences in individual class members' proof of damages is not fatal to class certification." (*Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App.4th at p. 238.)

**IV.  The doctrine of exclusive concurrent jurisdiction does not apply here**

Whiting faults the trial court for violating the doctrine of exclusive concurrent jurisdiction. Courts developed the doctrine of exclusive concurrent jurisdiction to avoid potentially contradictory decisions or awards. (See, e.g., *7-Eleven Owners for Fair Franchising v. Southland Corp.*, *supra*, 85 Cal.App.4th at p. 1175 ["'conflicting judgments'"]; *id.* at p. 1176 ["'contradictory decisions or awards'"]; *Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 706 ["'unseemly conflict'"]; *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 770 ["'contradictory decisions or awards'"]; *Plant Insulation Co. v. Fibreboard Corp*. (1990) 224 Cal.App.3d 781, 787 [same].)

There was no threat of potentially conflicting decisions or awards in this case. To achieve coordination and to avoid conflict, Judge West told all parties, "I'll confer with Judge Highberger about this, and see what he wants to do." Judge West then stayed the *Whiting* action. With Judge West's stay in place, Judge Highberger decided intervener Whiting's motion about exclusive concurrent jurisdiction on December 5, 2011. Judge West's stay thus eliminated any threat of conflicting decisions or awards between these two courts, because one case was stayed in deference to the other case's progress.

The trial courts synchronized their actions to prevent conflict. The attorneys from both cases appeared together before each of the judges. There were no conflicting rulings or awards, nor was there any danger of conflict. When the rationale for doctrine is missing, the doctrine does not apply.

10

## V. Notice objections are waived

Whiting's opening brief asserts specific objections to the notice to the class. Webster and LegalZoom rebutted these objections. Because Whiting abandoned these objections in his reply, he has waived these arguments.

## VI. Disposition

The judgment is affirmed. Webster and LegalZoom are entitled to costs on appeal.

NOT TO BE PUBLISHED


WILEY, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article Vi, section 6 of the California Constitution.