Filed 10/3/25  Portillo v. AJR Trucking CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EDWIN PORTILLO et al., | B328649 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV15591) |
| AJR TRUCKING, INC., | |
| Defendant and Respondent; | |
| MICHAEL SMITH et al., | |
| Objectors and Appellants. | |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County.  Stuart M. Rice, Judge. Affirmed.

Aiman-Smith & Marcy, Reed W.L. Marcy, Brent A. Robinson; Henning Kramer Ruiz & Singh, Jennifer Kramer; Hutkin Law Firm, and Allen K. Hutkin for Objectors and Appellants.

Shegerian & Associates, Carney R. Shegerian and Jill McDonnel for Plaintiffs and Respondents.

Knapp, Petersen & Clarke, Diron M. Ohanian, K.L. Myles, and Michael D. Carr for Defendant and Respondent.

_____

## INTRODUCTION

Objectors Michael Smith and Ira John Gilmore[1] appeal from a judgment approving a settlement agreement and a postjudgment order denying their motion to vacate the judgment in a class action brought by plaintiffs Edwin Portillo and Mauricio Portillo[2] against defendant AJR Trucking, Inc. (AJR). Gilmore and Smith contend the court erred in approving the settlement agreement because: (1) the court lacked sufficient information about AJR's financial status to determine the agreement was fair; (2) the agreement releases Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) claims that were not disclosed in the plaintiffs' PAGA notice that was sent to the California Labor and Workforce Development Agency (LWDA); (3) the agreement violates due process because absent class members were inadequately represented; and (4) notice of the settlement agreement was constitutionally defective because it omitted a material term of the agreement. As we explain, each of these arguments lacks merit. Accordingly, we affirm.

_____

[1] We sometimes collectively refer to Smith and Gilmore as "the objectors."

[2] Because they share the same last name, we individually refer to Edwin Portillo and Mauricio Portillo by their first names.

# BACKGROUND

## 1.    The class actions

AJR is a trucking company that provides transportation services to the United States Postal Service (USPS). MDB Transportation, Inc. is a commercial trucking company, and MDB Logistics, Inc. is a warehousing and transportation company.[3] Edwin and Mauricio previously worked for AJR. Edwin worked as an independent contractor for the company, while Mauricio worked as an employee for the company before working as an independent contractor. Gilmore previously worked for AJR, while Smith previously worked for MDB.

In August 2018, Smith and a group of former truck drivers filed two lawsuits against AJR, MDB, and several other defendants (*Smith* lawsuits). The first lawsuit asserted individual, class, and PAGA claims on behalf of a group of truck drivers who claimed they worked for the defendants in the past four years and were misclassified as independent contractors. The second lawsuit asserted individual and class claims on behalf of another group of truck drivers who claimed they worked as employees for the defendants in the past four years. Both lawsuits alleged numerous violations of the Labor Code and Business and Professions Code, including failure to pay minimum wages for all hours worked; failure to provide meal and rest breaks; failure to reimburse for work-related expenses; and failure to provide accurate wage statements.

In May 2019, Edwin and Mauricio filed a complaint against AJR and three individual defendants, asserting individual and

---

[3]    We collectively refer to MDB Transportation, Inc. and MDB Logistics, Inc. as "MDB."

3

PAGA claims on behalf of AJR's "current and former aggrieved employees," including those misclassified as independent contractors (*Portillo* lawsuit). The *Portillo* lawsuit alleged many of the same Labor Code and Business and Professions Code violations against AJR as the *Smith* lawsuits, as well as other claims, including retaliation and wrongful termination. The original complaint in the *Portillo* lawsuit did not assert any class claims.

Before the *Portillo* lawsuit was filed, Edwin notified the LWDA that he intended to file a representative PAGA action against AJR on behalf of himself and the company's current and former employees. Edwin alleged that during his employment, AJR "engaged in a pattern and practice of misclassifying [him as an independent contractor] and failing to provide [him] and other non-exempt employes all rest and meal periods[,] including second meal periods and failing to provide accurate, itemized earning statements according to California law." Edwin also alleged that AJR failed to: (1) pay a minimum wage; (2) pay for all hours worked; (3) provide meal and rest breaks; (4) pay for overtime hours worked; (5) reimburse for fuel expenses; and (6) pay for wages due on termination. Edwin alleged AJR violated Labor Code sections 98.6, 200, 201–203, 204, 206, 210, 226, 226.3, 226.7, 510, 512, 558, 1102.5, 1194, and 3700.5, subdivision (a).

In September 2019, the trial court found the *Portillo* and *Smith* lawsuits were related, and it designated the first *Smith* lawsuit as the lead case. Discovery in all three cases was stayed pending a mediation hearing with all parties before a retired judge.

4

In November 2019, the *Smith* plaintiffs and the defendants filed initial status conference statements. The mediation hearing was cancelled because the *Portillo* plaintiffs refused to contribute to the costs of mediation and the defendants failed to provide data and documents that the *Smith* plaintiffs' counsel "deemed necessary." After the mediation hearing was cancelled, the *Portillo* plaintiffs "made a separate settlement offer."

In late November 2019, the court ordered all parties to participate in a mandatory settlement conference. Discovery in all cases remained stayed.

In March 2020, all parties attended a mandatory settlement conference, at which none of the parties reached a settlement agreement. Prior to the conference, AJR provided the *Smith* and *Portillo* plaintiffs with over 1,000 pages of driver compensation records.

In November 2020, the *Smith* and *Portillo* plaintiffs deposed AJR's person most knowledgeable. AJR provided both sets of plaintiffs with "driver compensation records and policies totaling about 1,794 pages."

In January 2021, all parties attended confidential mediation. Although none of the parties reached a settlement agreement, AJR continued to negotiate with the *Portillo* plaintiffs.

In June 2021, the *Portillo* plaintiffs and AJR agreed in principle on a settlement totaling $1,095,000 (Settlement Agreement). The *Portillo* plaintiffs later notified the court that they had reached a settlement agreement with AJR "on a class basis."

In August 2021, the *Portillo* plaintiffs filed a first amended complaint against AJR. The amended complaint added class

5

allegations, asserting that the class action was brought against AJR "for failing to provide compliant meal periods and rest breaks or premium pay in lieu thereof, for unpaid minimum wages, unpaid overtime wages, failing to provide timely and accurate wage statements, waiting time penalties, and other related penalties and damages under the California Labor Code and California Business & Professions Code." The amended complaint identified two subclasses: Subclass A consisted of all current and former employees who drove for AJR within the class period, and Subclass B consisted of all current and former drivers who allegedly were misclassified as independent contractors and drove for AJR within the class period. The amended complaint asserted 11 class causes of action for various wage and hour violations, consisting of 10 causes of action brought on behalf of the entire class plus one cause of action for unlawful deduction from wages brought on behalf of only the members of Subclass B.

In early December 2021, the trial court denied Smith's motion for leave to intervene in the *Portillo* lawsuit. The court found that although Smith had a sufficient interest in the *Portillo* lawsuit's class claims, disposition of the lawsuit would not impede or impair his ability to protect his interest in those claims. Specifically, the court found that Smith could protect that interest by opting out of, or objecting to, the Settlement Agreement between the *Portillo* plaintiffs and AJR. As to the *Portillo* lawsuit's PAGA claim, the court found that Smith lacked any personal interest in that claim's outcome. Smith appealed from the order denying leave to intervene, but his appeal was later dismissed.

## 2. Preliminary approval of the Settlement Agreement

In late December 2021, the *Portillo* plaintiffs filed a motion for preliminary approval of the Settlement Agreement. The *Portillo* plaintiffs claimed that the agreement was reached after an "arm's-length" negotiation between them and AJR, with guidance from a retired judge, who was an "experienced and well-respected class action mediator."

The Settlement Agreement sought to resolve class claims on behalf of approximately 730 current and former employees and independent contractors who drove trucks for AJR, divided into the two subclasses defined in the *Portillo* lawsuit's first amended complaint. The agreement provided for a total settlement amount of $1,095,000, plus employer payroll taxes to be paid separately by AJR. From the total settlement amount, the parties intended to deduct $365,000 for attorney fees, $10,000 for administration costs, $15,000 to be paid to LWDA as PAGA penalties, $5,000 as an enhancement payment to each named *Portillo* plaintiff, and costs and expenses not to exceed $15,000, leaving a net settlement amount of $680,000.

The *Portillo* plaintiffs explained that the net settlement amount would be allocated to all class members on a pro-rata basis, according to the total workweeks worked for each class member during the class period. The settlement amount for members of Subclass B, the independent contractors, would be enhanced by a 1.25 multiplier to be applied to those members' total workweeks, to account for "their additional unreimbursed business expenses and unlawful deductions . . . that the employee drivers [i.e., the members of Subclass A] did not have." The entire net settlement amount would be paid to all class members who do not opt out of the settlement class, without any

7

participating class members needing to submit claims for payment. Based on an assumed participating class of 730 former employees and independent contractors, the approximate average net recovery for participating members would be $931.

Under the terms of the Settlement Agreement, AJR would be required to distribute the entire net settlement amount. If any qualifying class members opted out of the agreement, the share for each participating class member would increase proportionately.

The *Portillo* plaintiffs provided an estimated range of recoverable damages for each class claim asserted in the first amended complaint, with the combined estimated total of all claims ranging from $1.36 million to $3.39 million. The *Portillo* plaintiffs explained that the estimated range of damages was determined by offsetting AJR's "maximum theoretical exposure by: (i) the strength of [AJR's] affirmative defenses; (ii) the risk of the Court finding that a class trial and/or PAGA trial would be unmanageable; (iii) the risk that the class would not be certified, or if certified, would be decertified; (iv) the risk of losing on any of a number of dispositive motions that could have been brought before trial . . . which may have eliminated all or some of Plaintiffs' claims, or barred evidence necessary to prove such claims; (iv) the risk of losing at trial or prevailing on only some of the claims; (vi) the chances of the Court exercising its discretion to reduce PAGA penalties . . . ; (vi[i]) the chances of a favorable verdict being reversed on appeal; and (vii[i]) the difficulties attendant to collecting on a judgment."

In January 2022, the trial court issued a checklist of items that it wanted the *Portillo* plaintiffs and AJR to address before preliminarily approving the Settlement Agreement. Among other

things, the court asked the settling parties to provide: (1) a description of the financial information that the *Portillo* plaintiffs' counsel reviewed when evaluating AJR's ability to pay the settlement amount; (2) a declaration from one of AJR's officials explaining why AJR needed to pay the settlement amount through installments and identifying what evidence establishes that AJR has the ability to pay the settlement amount; (3) a revised release of claims that is limited only to claims based on the first amended complaint's factual allegations; and (4) declarations from the *Portillo* plaintiffs explaining which subclass each of them represents.

On June 8, 2022, Smith, Gilmore, and the other plaintiffs named in the *Smith* lawsuits filed an amicus curiae brief opposing preliminary approval of the Settlement Agreement. The amicus brief asked the court to reject the agreement, arguing that it "carries the hallmarks of a reverse auction."

On June 14, 2022, the *Portillo* plaintiffs filed a supplemental brief addressing the issues raised by the court, in support of which AJR's vice president submitted a declaration. According to the vice president, AJR provides transportation services for the USPS, transporting mail between USPS facilities. During the COVID-19 pandemic, AJR faced "unprecedented challenges" and was not able to operate at full capacity, resulting in a decreased revenue stream. The company believed that dispensing the settlement amount through two installment payments would enable it to continue to operate in a responsible manner and pay its current employees. The company was setting aside funds to ensure it could meet its financial obligations under the Settlement Agreement, and it was currently able to fund the settlement amount through two installment payments.

9

The *Portillo* plaintiffs' counsel also filed a declaration. The *Portillo* plaintiffs' counsel discussed AJR's financial condition with AJR's counsel, who explained that the company's "business had been negatively impacted by the COVID-19 pandemic in that it suffered a significant reduction in revenue following slowdowns in its business from reduced volume of business and the employment of fewer-than-normal drivers." The *Portillo* plaintiffs' counsel explained that because the $1,095,000 settlement value was "substantial" for the class's size, AJR's "limited financial resources was a factor but not [a] driving force behind Plaintiffs' decision to ultimately accept the settlement."

On June 17, 2022, the court granted preliminary approval of the Settlement Agreement.

### 3.    Final approval of the Settlement Agreement

As of August 2022, there were 826 class members in the *Portillo* lawsuit. Notice of the agreement was mailed to all 826 members. Only one notice was undeliverable, and only three class members opted out of the Settlement Agreement.

In September 2022, Smith and Gilmore objected to the Settlement Agreement. Among other things, Smith and Gilmore argued: (1) the settlement amount was nominal, as it was significantly lower than the $19 million demand initially made by the *Smith* plaintiffs; (2) the agreement's release was overbroad; and (3) the class members did not receive adequate notice of the agreement. Smith and Gilmore also argued that the agreement unfairly favored Subclass B, of which the *Portillo* plaintiffs were members, claiming that it evenly split the net settlement amount between the two subclasses, even though Subclass A had far more members than Subclass B. Finally, Smith and Gilmore argued that the agreement should be rejected because AJR and

10

MDB were "integrated entities" and should be treated as "a single enterprise."

In October 2022, the settling parties responded to Smith's and Gilmore's objections and moved for final approval of the Settlement Agreement. Although the settling parties acknowledged that Gilmore worked for AJR and was a member of the settlement class, they argued that Smith lacked standing to object to the agreement because he never worked for the company. AJR's vice president submitted a declaration in which he testified that the company never employed Smith or any of the other plaintiffs named in the *Smith* lawsuits. Through his own company, Smith worked as an independent contractor for MDB. AJR never paid Smith or his company for any work that he performed for MDB, nor did AJR otherwise control any aspect of that work. The vice president also explained that AJR and MDB are separate entities, as they maintain separate records, business models, business licenses, and clients.

The settling parties also provided a declaration from the settlement administrator, who explained how the net settlement amount would be divided evenly between Subclass A and Subclass B. The allocation between the subclasses would be proportional to the total workweeks worked by all the members of each subclass, with a 1.25 multiplier being applied to the total workweeks worked by the members of Subclass B. According to the settlement administrator, Subclass A would receive approximately $673,000, and Subclass B would receive approximately $2,300, from the net settlement amount. The average payment for a member of Subclass A would be $828.22, with a maximum payment of $4,727.78 and a minimum payment of $1.78. The average payment for a member of Subclass B would

11

be $345.93, with a maximum payment of $556.46 and a minimum payment of $93.01. Excluding their $5,000 enhancement payments, Edwin would receive an estimated settlement payment of $488.25 and Mauricio would receive an estimated settlement payment of $556.46.

In November 2022, the trial court overruled Smith's and Gilmore's objections to the Settlement Agreement. The court found that AJR and MDB were separate entities. Because Smith never worked for AJR, he was not a member of the settlement class and, consequently, lacked standing to object to the agreement.

The court also found that the Settlement Agreement was fair. The court relied on the following factors: (1) the agreement was reached following a mediation session before a retired judge; (2) class counsel was experienced in litigating similar cases; and (3) out of the 826 putative class members, only one member objected and only three members opted out. The court found that class counsel provided sufficient information describing the documents and data that she relied on in reaching the Settlement Agreement to allow the court to make an independent determination of the agreement's adequacy. Finally, the court found that the total settlement amount of $1,095,000 was "within the 'ballpark of reasonableness' " based on AJR's estimated maximum and realistic exposure to liability had the class action proceeded to trial.

On November 29, 2022, the court entered judgment granting final approval of the Settlement Agreement.

**4.     The motion to vacate the judgment**

On December 15, 2022, Smith and Gilmore filed a motion to vacate the judgment under Code of Civil Procedure section 663

12

(Section 663). Smith and Gilmore asked the court to vacate the judgment, set aside the order granting final approval of the Settlement Agreement, and enter a new order denying approval of the agreement. Among other things, they argued that the court erred in applying a presumption of fairness to the agreement and in finding the agreement was not the product of "reverse auction." Smith and Gilmore argued that the court lacked sufficient information to approve the agreement, such as accurate timekeeping and payroll records from AJR, as well as any documents addressing AJR's financial condition.

On January 18, 2023, the trial court denied the motion to vacate. As a threshold matter, the court explained, it denied the motion as an improper motion to vacate under section 663 because Smith and Gilmore did not specify what type of judgment they wanted the court to enter in lieu of the original judgment. Instead, Smith and Gilmore wanted the court to vacate the original judgment and return the case to its pre-settlement state. Such relief, the court explained, is not available under section 663. The court also rejected Smith's and Gilmore's arguments on their merits.

Smith and Gilmore appeal from the judgment and the order denying their motion to vacate.

## DISCUSSION

### 1. Standing and timeliness of the appeal

While this appeal was pending, the *Portillo* plaintiffs moved to dismiss it as untimely. We deferred ruling on the motion to dismiss until briefing of the appeal was complete. AJR and the *Portillo* plaintiffs also argue that Smith lacks standing to appeal the judgment and the order denying the motion to vacate the judgment because he is not a member of the settlement class

13

and, as a result, was not aggrieved by the court's approval of the Settlement Agreement. Smith concedes that he is not a member of the settlement class, but he asserts that he has standing to challenge the Settlement Agreement because it releases PAGA claims against AJR. Smith argues that he has exclusive authority to prosecute the PAGA claims against AJR because he was the first plaintiff to bring such claims against the company.

As a threshold matter, we need not determine whether Smith has standing to appeal. It is undisputed that Gilmore worked for AJR and, as a result, is a member of the settlement class. Because he opposes the trial court's approval of the Settlement Agreement, he was aggrieved by the court's judgment granting final approval of the agreement and the order denying the motion to vacate the judgment. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736–737 (*Carleson*) ["One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment"].)

At oral argument, the settling parties argued that Gilmore nevertheless lacks standing to appeal the judgment because he is not a party of record. According to the settling parties, Gilmore and Smith's motion to vacate the judgment was not a valid statutory motion to vacate under section 663, and, as a result, the court's order denying that motion is not appealable. We disagree.

In *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260 (*Hernandez*), the California Supreme Court addressed when unnamed class members who challenge a class settlement have standing to appeal a judgment approving the settlement. The court held that unnamed class members lack standing to appeal the judgment if they only objected to the class settlement in the trial court but did not otherwise become parties

14

of record.  (*Id*. at pp. 269–272.)  The court outlined two ways an unnamed class member may become a party of record:  (1) by filing a timely complaint in intervention before final judgment that sets forth the grounds upon which intervention rests; or (2) by filing an appealable motion to set aside and vacate the class judgment under section 663.  (*Ibid*.)

The settling parties rely on *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282 (*Regents*) to argue Gilmore never became a party of record because he and Smith did not file a motion to vacate the judgment under section 663.  There, the objector, who was not a party to the trial court proceedings, moved to vacate the trial court's order granting the plaintiff's petition for writ of mandate.  (*Id*. at pp. 286, 289.)  The court denied the objector's motion, and she appealed.  (*Id*. at pp. 290–291.)

The Court of Appeal addressed whether the court's order denying the motion to vacate was appealable.  (*Regents*, *supra*, 80 Cal.App.5th at pp. 291–292.)  The court first concluded that the objector's motion was not a section 663 motion to vacate because she "did not purport to file her motion under section 663, nor did she file on a timeline consistent with section 663a.  Moreover, her motion did not request that the court set aside its judgment and enter a different judgment based on the same facts."  (*Regents*, at p. 292.)  Nevertheless, the court concluded, the challenged order was appealable as a nonstatutory motion to vacate a void judgment.  (*Ibid*.)

The settling parties' reliance on *Regents* is misplaced.  Unlike the objector in that case, Gilmore and Smith filed a motion to vacate the judgment under section 663.  Indeed, their motion was titled, in part, "NOTICE OF MOTION AND

15

MOTION TO VACATE AND ENTER DIFFERENT JUDGMENT," indicating the motion was brought under section 663.  (See § 663 [authorizing court *to set aside and vacate a judgment and enter a different judgment* upon motion of aggrieved party].)  The notice of motion also stated that Gilmore and Smith moved under sections 663 and 663a for an order to set aside and vacate the judgment and "[t]o enter another and different judgment and order denying settlement approval."  Finally, Gilmore and Smith cited to, and discussed, section 663 and case law addressing the legal standards governing motions to vacate under that statute in their motion.

It is plain, then, that Gilmore and Smith moved to vacate the judgment in this case under section 663.  As the Supreme Court explained in *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124 (*Ryan*), an order denying a section 663 motion to vacate a judgment is appealable.  (*Ryan*, at pp. 134–135.)

The settling parties urge us to find the court's order denying the motion to vacate in this case is not appealable because that motion was invalid.  The settling parties point out that the trial court denied the motion in part because Gilmore and Smith did not identify a different judgment that they wanted the court to enter.  Instead, Gilmore and Smith appeared to request "the Court reverse its order granting final approval and return the case to its pre-approval posture," which the court found was "not a proper use of the Section 663 motion."

We decline to hold that the court's order denying the motion to vacate in this case was not appealable simply because the trial court found Gilmore and Smith did not request the proper relief.  If that were the rule, it would insulate from appellate review orders denying section 663 motions to vacate on

16

the ground that the moving parties did not request appropriate relief, regardless of whether that determination was appropriate. Such a rule would run contrary to the long-standing policy of according the right to appeal in doubtful cases, based on the remedial nature of that right, " ' "when such can be accomplished without doing violence to the applicable rules." ' " (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.)

In short, we conclude Gilmore became a party of record when he filed the motion to vacate the judgment under section 663. (See *Hernandez*, *supra*, 4 Cal.5th at p. 267.) Because Gilmore is a party of record who was aggrieved by the challenged judgment and the order denying the motion to vacate the judgment, he has standing to appeal. (*Carleson*, *supra*, 5 Cal.3d at p. 738; see also *Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 821 (*Carter*) [if a class member is dissatisfied with the proposed settlement, "he can seek to remedy that problem through objection or intervention, and, if not satisfied with the result, he could appeal"].)

The settling parties do not explain how the outcome of the appeal would be any different if we conclude Smith lacks standing to appeal. Indeed, Gilmore and Smith jointly filed appellate briefs, and they raise the same arguments on appeal. Our resolution of those arguments will be the same regardless of whether we conclude both Smith and Gilmore, or just Gilmore, have standing to appeal. Because Gilmore has standing to appeal, we need not determine whether Smith does too.

We also conclude the appeal from the judgment and the order denying the motion to vacate is timely. The time to appeal from a judgment is governed by California Rules of Court, rule 8.104 (Rule 8.104). "Unless a statute or rules 8.108, 8.702,

17

or 8.712 provide otherwise, a notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment."  (Rule 8.104(a)(1).)  Where there is no evidence in the record definitively showing the appellant was properly served with notice of entry of the judgment, Rule 8.104(a)(1)(C)'s 180-day window to appeal from the judgment applies.  (*Montgomery Ward & Company, Inc. v. Imperial Cas. & Indem. Co.* (2000) 81 Cal.App.4th 356, 372–373 (*Montgomery Ward*).)

Here, the record does not definitively show that Gilmore was properly served with notice of entry of the judgment. Although the *Portillo* plaintiffs have submitted a copy of a document entitled "Certificate of Electronic Service Code of Civil Procedure 1010.6," which shows the court clerk electronically served a copy of the judgment, that document does not indicate which parties were served.  Nothing else in the record shows Gilmore was properly served with notice of entry of the judgment in compliance with Rule 8.104(a)(1)(A) or (B).  Consequently, Rule 8.104(a)(1)(C)'s 180-day window to appeal from the judgment applies.  (*Montgomery Ward*, *supra*, 81 Cal.App.4th at pp. 372–373.)  The judgment was entered on November 29, 2022, and the notice of appeal was filed on April 21, 2023, less than 180 days after the judgment was entered.  The appeal, therefore, is timely as to the judgment.

The appeal also is timely as to the order denying the motion to vacate the judgment under section 663. As we noted above, such an order is separately appealable. (*Ryan*, *supra*, 3 Cal.5th at pp. 134–135.) The time to appeal from that order is, therefore, also governed by Rule 8.104(a). (See Rule 8.104(e) [as used throughout Rule 8.104, " 'judgment' includes an appealable order if the appeal is from an appealable order"].) The *Portillo* plaintiffs served Gilmore with notice of entry of the order denying the motion to vacate on February 21, 2023, and the clerk served Gilmore with notice of that order on February 24, 2023. Thus, Gilmore had 60 days from the earliest of those dates to file the notice of appeal. (Rule 8.104(a)(1)(A)–(B).) The notice of appeal was filed on April 21, 2023, or 59 days after February 21, 2023.

Because the appeal is timely as to both the judgment and the order denying the motion to vacate the judgment, we deny the *Portillo* plaintiffs' motion to dismiss the appeal. We now turn to the merits of the appeal.

## 2. The trial court did not abuse its discretion when it granted final approval of the Settlement Agreement

The objectors argue the court abused its discretion when it granted final approval of the Settlement Agreement because: (1) the court lacked sufficient information about AJR's financial condition to determine the agreement was fair; (2) the agreement releases PAGA claims beyond the scope of the *Portillo* plaintiffs' PAGA notice; (3) absent class members were not adequately represented by the *Portillo* plaintiffs; and (4) the notice of settlement omitted a material term of the agreement. We reject each of these arguments.

19

### 2.1. General legal principles and standard of review

To prevent fraud, collusion, or unfairness to class members, the trial court must approve the settlement or dismissal of a class action. (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800 (*Dunk*).) To approve a class settlement, the court must find that the settlement agreement is "fair, adequate, and reasonable." (*Id.* at p. 1801.)

In determining whether a class settlement is fair, the court should consider several factors, including but not limited to, "the strength of plaintiffs' case[;] the risk, expense, complexity and likely duration of further litigation[;] the risk of maintaining class action status through trial[;] the amount offered in settlement[;] the extent of discovery completed and the stage of the proceedings[;] the experience and views of counsel[;] the presence of a governmental participant[;] and the reaction of the class members to the proposed settlement." (*Dunk, supra,* 48 Cal.App.4th at p. 1801.)

A presumption of fairness exists where: (1) the settlement agreement was reached through arm's-length negotiation; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. (*Carter, supra,* 224 Cal.App.4th at p. 820.) Even where the factors supporting a presumption of fairness exist, the court must independently evaluate whether "the consideration being received for the release of the class members' claims is reasonable in light of the strengths and weaknesses of the claims and the risks of the particular litigation." (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 (*Kullar*).)

20

A trial court has "broad discretion to determine whether the settlement is fair." (*Dunk*, *supra*, 48 Cal.App.4th at p. 1801.) Our task, therefore, "is not to make an independent determination whether the terms of the settlement are fair, adequate and reasonable, but to determine 'only whether the trial court acted within its discretion.' " (*Kullar*, *supra*, 168 Cal.App.4th at pp. 127–128.) In making this determination, we give great weight to the trial court's views. (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1145 (*7-Eleven*).)

### 2.2. Evidence of AJR's financial condition

The objectors contend the trial court lacked sufficient evidence of AJR's financial condition, including the company's ability to make settlement payments, before determining that the Settlement Agreement was fair, adequate, and reasonable. They argue the court erred in relying solely on statements from plaintiffs' counsel and AJR's vice president concerning the company's financial condition, without itself reviewing any of the company's records. This argument lacks merit.

As a threshold matter, the objectors mischaracterize the extent of the court's reliance on AJR's financial condition in approving the Settlement Agreement. In their opening brief, the objectors assert that the court's determination that the agreement was fair, reasonable, and adequate "turned *entirely* on" its conclusion that the settlement amount was justified by AJR's financial condition. To the contrary, the record shows that AJR's financial condition was only one factor out of many that the court considered in approving the Settlement Agreement.

For instance, in its ruling granting preliminary approval of the Settlement Agreement, the court explained that class

21

counsel's evaluation of AJR's financial condition was one of several factors that supported its finding that the agreement was entitled to a presumption of fairness.  Later in that same ruling, the court found that the agreement was fair, adequate, and reasonable, and it discussed nearly all the relevant factors outlined in *Dunk*, including:  (1) the strength of the *Portillo* plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings at which the settlement was reached; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement.  (See *Dunk*, *supra*, 48 Cal.App.4th at p. 1801.)

In its ruling granting final approval of the Settlement Agreement, the court explained why it continued to find the agreement was fair and reasonable, noting the following factors: (1) the agreement was reached following a mediation hearing before a retired judge; (2) class counsel had experience litigating similar class actions; (3) only a small number of class members objected to, or opted out of, the settlement; (4) class counsel described in sufficient detail the documents and data that she reviewed before agreeing to settle the case and provided sufficient information concerning AJR's maximum and realistic exposure for each of the claims asserted in the *Portillo* plaintiffs' operative first amended complaint; (5) the total settlement amount was " 'in the ballpark of reasonableness' " considering AJR's realistic and maximum exposure; and (6) sworn statements provided by class counsel and AJR's vice president showed that

22

AJR's financial condition was a relevant factor in determining that the "settlement is fair, adequate, and reasonable."

The objectors' mischaracterization of the weight the court gave to evidence of AJR's financial condition in approving the Settlement Agreement undermines their challenge to the court's finding that the agreement was fair, adequate, and reasonable. It is well-settled that an abuse of discretion warrants reversal only if it is prejudicial. (*Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 378 (*Farrant*).) The appellant bears the burden of demonstrating prejudice. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 403.)

Here, the objectors do not acknowledge, let alone challenge, most of the factors that the court relied on to find the Settlement Agreement was fair, adequate, and reasonable. Nor do they explain why the court would not have approved the Settlement Agreement had it not relied on what they claim was insufficient information about AJR's financial condition. In other words, the objectors have not met their burden to show they were prejudiced by the court's failure to review more evidence concerning AJR's financial condition before approving the Settlement Agreement. The objectors, therefore, have not established the court committed reversible error by relying in part on evidence of AJR's financial condition to approve the Settlement Agreement. (See *Farrant*, *supra*, 67 Cal.App.5th at p. 378.)

In any event, we reject the objectors' claim that the court had insufficient information concerning AJR's financial condition to determine that the Settlement Agreement was fair, adequate, and reasonable. Before approving a class settlement, the court must have "basic information about the nature and magnitude of the claims in question and the basis for concluding that the

consideration being paid for the release of those claims represents a reasonable compromise." (*Kullar*, *supra*, 168 Cal.App.4th at p. 133.) The court does not, however, need to review an "explicit statement of the maximum amount the plaintiff class could recover if it prevailed on all its claims." (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 409 (*Munoz*).) Indeed, the court is not required to review a particular type or quantity of information before approving a class settlement, as that determination is " ' "nothing more than 'an amalgam of delicate balancing, *gross approximations and rough justice.*' " ' " (*7-Eleven*, *supra*, 85 Cal.App.4th at p. 1145, italics added.)

The objectors rely heavily on *Kular* to support their argument that the court lacked adequate information about AJR's financial condition to approve the Settlement Agreement. In that case, the appellate court reversed a judgment granting final approval to a class settlement because there was "nothing" before the trial court addressing the extent of class counsel's investigation of the adequacy of the settlement, aside from counsel's assurance that "they had seen what they needed to see." (*Kullar*, *supra*, 168 Cal.App.4th at p. 129.) The trial court in *Kullar* lacked any information "to explain, much less to substantiate, [the settling parties'] evaluation of the magnitude or potential merit of the claims being settled." (*Id.* at p. 133.)

*Kular* is distinguishable. As we explain, the settling parties provided far more evidence describing what documents, records, and other information concerning AJR's financial condition that they reviewed before entering the Settlement Agreement.

Before it preliminarily approved the Settlement Agreement, the court asked the settling parties to provide additional information concerning AJR's ability to make settlement payments. In response to the court's request, the *Portillo* plaintiffs filed a supplemental brief and a declaration executed by their counsel. The *Portillo* plaintiffs' counsel discussed AJR's financial condition with AJR's counsel, who explained that the company's "business had been negatively impacted by the COVID-19 pandemic in that it suffered a significant reduction in revenue following slowdowns in its business from reduced volume of business and the employment of fewer-than-normal drivers." The *Portillo* plaintiffs' counsel explained that because the $1,095,000 settlement value was "substantial" for the class's size, AJR's "limited financial resources was a factor but not a driving force behind Plaintiffs' decision to ultimately accept the settlement."

AJR's vice president also submitted a declaration in response to the court's request for additional information concerning the company's financial condition. The vice president explained that due to the COVID-19 pandemic, the company was operating at a reduced capacity and taking in reduced revenue at the time it reached the Settlement Agreement. The agreed upon settlement amount allowed the company to "manage its cash flow to stay in business" while making settlement payments to class members.

In support of the *Portillo* plaintiffs' motion for final approval of the Settlement Agreement, their counsel testified that the settling parties engaged in "sufficient investigation, discovery, and discussion to assess the relative merits of the claims of Plaintiffs on a classwide basis and [AJR's] defenses to

25

them, as well as the likelihood of recovery." Counsel outlined in detail the nature of the investigation she and her cocounsel performed in negotiating, and evaluating the adequacy of, the Settlement Agreement. As part of that investigation, AJR provided the *Portillo* plaintiffs with "confidential informal discovery, including class size, workweeks and other pertinent statistics, along with other additional records and financials for AJR . . . . Plaintiffs, through their counsel, analyzed these records and data." The *Portillo* plaintiffs' counsel reviewed "AJR's pertinent Profit and Loss Statements and Statement of Income and Retained Earnings to confirm [the company's] inability to fund a substantially greater settlement sum." In counsel's view, the settlement would take a "substantial [and] profound portion of AJR's total assets." The company "would not be able to fund a substantially greater settlement but will be able to fund the settlement without being pushed into bankruptcy or creating great difficulty funding the settlement."

When it granted final approval of the Settlement Agreement, the court found that AJR's "financial wherewithal" to satisfy the terms of the settlement was a "legitimate factor in determining that the settlement is fair, adequate, and reasonable," noting that "[s]tatements made under oath support" consideration of that factor. Finally, in denying the objectors' motion to vacate the judgment, the court explained that it "closely scrutinized the Settling Parties' submissions to make sure that the settlement was fair and reasonable and that Plaintiffs' counsel had received sufficient information to enter into the settlement. Considering all the evidence, the Court was satisfied that had occurred."

In short, the settling parties described in detail what information they reviewed concerning AJR's financial condition before the Settlement Agreement was executed, and the *Portillo* plaintiffs' counsel explained how that information informed her decision to accept the terms of the agreement. While the settling parties could have provided more information about AJR's financial condition to aid the court's review of the fairness and adequacy of the Settlement Agreement, the law did not require them to do so. (See *Munoz*, *supra*, 186 Cal.App.4th at p. 409; *7-Eleven*, *supra*, 85 Cal.App.4th at p. 1145.) Further, considering class counsel's representation that AJR's financial condition was only one factor, and not the driving force, in accepting the terms of the Settlement Agreement, the court reasonably could conclude that it had sufficient information concerning the company's financial condition to find the agreement was fair, reasonable, and adequate.[4]

---

[4] While this appeal was pending, the objectors asked us to take judicial notice of a memorandum drafted by the Assistant Attorney General of the United States and issued to the Criminal Division of the United States Department of Justice entitled, "Evaluating a Business Organization's Inability to Pay a Criminal Fine or Criminal Monetary Penalty." That document provides guidance to Department of Justice employees when evaluating whether a criminal defendant has the ability to pay a criminal fine or penalty in a federal criminal prosecution. It does not address what type of information California law requires settling parties and courts to review in evaluating a defendant's ability to satisfy a civil class settlement. It therefore is not relevant to any of the issues raised in this appeal. Accordingly, we deny the objectors' request for judicial notice. (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 59, fn. 7.)

27

### 2.3.  Release of PAGA claims

The objectors next contend the court should have denied final approval of the Settlement Agreement because the agreement purports to release PAGA claims asserted in the *Portillo* plaintiffs' first amended complaint that are based on facts and legal theories that were not disclosed in the PAGA notice that Edwin sent to the LWDA.  AJR and the *Portillo* plaintiffs argue that this argument is forfeited because it was not raised below.  We agree that this argument is forfeited.

Edwin sent a PAGA notice to the LWDA in 2018, several years before the court approved the Settlement Agreement.  That notice outlined the factual and legal theories on which Edwin's proposed PAGA claims were based.  The *Portillo* lawsuit's original and first amended complaints included PAGA claims.  Relevant here, the first amended complaint outlined the various factual and legal theories on which the *Portillo* plaintiffs' PAGA claims were based.  The initial and final versions of the Settlement Agreement explained the scope of the class members' release of PAGA claims against AJR.  Although the initial version of the Settlement Agreement included a broader release, the final version of the agreement stated that class members agreed to release "all claims for PAGA . . . penalties that arise out of or relate to the factual allegations in [Edwin's PAGA notice] and pled in the First Amended Complaint . . . ."

Gilmore and Smith opposed preliminary and final approval of the Settlement Agreement, and they moved to vacate the judgment granting final approval of the agreement.  Yet they never argued below that Edwin's PAGA notice did not fully disclose the factual and legal theories that formed the basis for the PAGA claims asserted in the first amended complaint and

released through the Settlement Agreement. They also do not explain why they did not raise that argument below.

A party may not raise an issue for the first time on appeal where that issue could have been raised in the trial court. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 (*Johnson*).) Because Gilmore and Smith never objected below to the Settlement Agreement because it releases PAGA claims that exceed the scope of Edwin's PAGA notice, they have forfeited on appeal any challenge to the court's approval of the Settlement Agreement on that ground. (*Ibid.*)

### 2.4. Representation of absent class members

The objectors next argue that the court abused its discretion and violated absent class members' due process rights when it approved the Settlement Agreement because the interests of those class members were not adequately represented. According to the objectors, there was a clear conflict between the members of Subclass A, the employee subclass, and the members of Subclass B, the independent contractor subclass. Because the *Portillo* plaintiffs were members of Subclass B, the Subclass B members received preferential treatment through the 1.25 multiplier used to calculate their settlement payments, and Subclass B constitutes only a small percentage of the entire settlement class. This argument lacks merit.

We reject the objectors' claim that absent class members were not adequately represented because the *Portillo* plaintiffs were members of Subclass B and the members of Subclass A were not represented by a named plaintiff. To maintain a class action, a representative plaintiff must adequately represent and protect the interests of absent class members. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 463.) "Therefore, a class

29

representative plaintiff must be situated similarly to the other class members united by a common interest." (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 284.)

Here, the *Portillo* plaintiffs were adequate representatives of the class. The *Portillo* plaintiffs presented evidence that Mauricio worked as both an employee and an independent contractor for AJR, while Edwin worked as only an independent contractor for the company. The named plaintiffs therefore represent the interests of members of both subclasses. Consequently, they are similarly situated to the absent class members, including those in Subclass A.

Further, even though Edwin and Mauricio both qualify as members of Subclass B due to Mauricio working as both an employee and an independent contractor for AJR, their claims were typical of the claims of the rest of the class. The first amended complaint asserted 11 causes of action on behalf of the entire class. 10 of those causes of action were asserted on behalf of members of both subclasses—i.e., the entire class, while only one cause of action—misclassification as independent contractors—was asserted on behalf of just the members of Subclass B. In other words, Edwin and Mauricio shared a common interest in nearly all of the causes of action brought on behalf of the entire class.

As for the objectors' claim that the use of a 1.25 multiplier to calculate the settlement payments for members of Subclass B demonstrates a clear conflict between the two subclasses, they did not argue below that the use of that multiplier created a conflict between the members of the two subclasses or was otherwise improper. They have, therefore, forfeited any

challenge to the fairness of the Settlement Agreement on that ground.  (*Johnson*, *supra*, 47 Cal.4th at p. 603.)

In any event, the objectors have not shown the use of the 1.25 multiplier to calculate the settlement payments for members of Subclass B resulted in a clear conflict between the two subclasses.  The settling parties and the objectors agreed below that members of Subclass B suffered higher losses because of unpaid and unreimbursed business expenses than members of Subclass A.  The 1.25 multiplier was used to compensate members of Subclass B for those increased losses.  The settling parties also presented evidence that even after the 1.25 multiplier is applied to the settlement payments for members of Subclass B, the average payment for a member of Subclass B will be lower than the average member of Subclass A.  The court, therefore, reasonably could have concluded that the use of the 1.25 multiplier did not unfairly favor members of Subclass B over members of Subclass A such that there was a clear conflict between the two subclasses.

The objectors also contend that the interests of absent class members were not adequately represented because the Settlement Agreement was the product of a reverse auction.  We reject this argument because it is underdeveloped.

It is a fundamental principle of appellate review that we presume the trial court's judgment is correct.  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 (*Keyes*).)  The appellant must prove otherwise through reasoned argument with citations to the record and relevant legal authority supporting each point made.  (*Ibid.*)  We are not obligated to develop issues for the appellant.  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)  Instead, our review is limited to the issues that the appellant

31

adequately raises and briefs.  (*Ibid*.)  The appellant forfeits any points that are not supported by reasoned legal argument and factual analysis.  (*Keyes*, at pp. 655–656.)

In their opening brief, the objectors assert in conclusory fashion that the Settlement Agreement was the product of a reverse auction because the *Portillo* plaintiffs and AJR reached a " 'quick settlement,' " AJR decided to settle the least developed lawsuit with the least experienced plaintiffs' counsel, and AJR failed to consolidate parallel litigation.  The objectors do not cite any evidence in the record supporting these assertions, nor do they offer any meaningful analysis applying the facts to the law.  They have, therefore, forfeited any argument that the Settlement Agreement should have been rejected because it was the product of a reverse auction.  (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.)

Finally, the objectors contend that absent class members were inadequately represented because the trial court "subsequently concluded that the claims of identically situated employees in the *Smith* [lawsuits] were appropriate for class certification because they are readily susceptible to common proof, in contrast to the claims of those misclassified as independent contractors."  To support this argument, the objectors ask us to take judicial notice of the trial court's September 27, 2023 order in the second *Smith* lawsuit granting certification to a class of "employee drivers and those paid during the class period on a non-hourly basis" as to some of that lawsuit's causes of action.

As a threshold matter, we deny the objectors' request for judicial notice of the trial court's September 27, 2023 order in the *Smith* lawsuit.  Our review of the trial court's decision to grant

final approval of the Settlement Agreement is limited to evidence that was before the court at the time it made that decision. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) The September 27, 2023 order granting class certification in the *Smith* lawsuits was issued after the court entered judgment granting final approval of the Settlement Agreement and denied the objectors' motion to vacate the judgment. The objectors do not identify any exceptional circumstances that would justify considering evidence that was not before the trial court. (*Ibid*.)

In any event, even if we were to consider the September 27, 2023 order, the objectors fail to explain its relevance. That is, they do not describe what possible impact the court's decision to grant class certification to a group of employees in a related lawsuit could have on the adequacy of the representation of absent class members through the Settlement Agreement in this case. Because the objectors have not meaningfully developed any argument to support this point, we disregard it. (*Keyes, supra*, 189 Cal.App.4th at pp. 655–656.)

### 2.5. Notice of settlement

Finally, the objectors contend the court should not have approved the Settlement Agreement because absent class members did not receive adequate notice of the settlement. According to the objectors, the notice of settlement failed to inform absent class members of a material term of the Settlement Agreement, namely that the settlement payments for members of Subclass B would be calculated using a 1.25 multiplier. The objectors forfeited this argument by not raising it below.

In their motion for preliminary approval of the Settlement Agreement, the *Portillo* plaintiffs explained that the settlement

payments for each member of Subclass B would be calculated using a 1.25 multiplier to account for unreimbursed business expenses and unlawful deductions that members of Subclass A did not experience. Gilmore and Smith filed an amicus brief responding to that motion and opposing preliminary approval of the Settlement Agreement.

Thus, the objectors were aware as early as the preliminary approval stage that the settling parties intended to use a 1.25 multiplier to calculate settlement payments for members of Subclass B. But the objectors never argued below that the notice of settlement was inadequate because it did not expressly disclose that payments made to Subclass B members would be calculated using that multiplier.

Instead, in their objections to final approval of the Settlement Agreement, the objectors argued that the absent class members did not receive adequate notice of the agreement because: (1) the notice of settlement was not sent to all class members; and (2) the class members received notice of the *Portillo* plaintiffs' class action and the notice of settlement at the same time. Further, in their motion to vacate the judgment, Gilmore and Smith argued that the notice of settlement was inadequate because it: (1) did not inform absent class members that the *Portillo* lawsuit was a different action from the *Smith* lawsuits; (2) did not disclose that the *Smith* lawsuits sought "substantially more money" than the amount at issue in the Settlement Agreement; (3) was written in "legalese" and, as a result, would be difficult to comprehend for absent class members who spoke only Spanish or were illiterate; and (4) did not disclose the range of potential damages AJR could be exposed to had the *Portillo* lawsuit gone to trial.

34

As we explained above, an appellant typically forfeits on appeal any argument that could have been, but was not, raised in the trial court. (*Johnson*, *supra*, 47 Cal.4th at p. 603.) By failing to object to the Settlement Agreement on the ground that absent class members were not notified that settlement payments for members of Subclass B would be calculated using a 1.25 multiplier, and by failing to explain why that objection could not have been raised below, the objectors have forfeited on appeal any claim based on that objection.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

RUBIN, J.*

---

*     Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.